UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>LOREN SHON WATERS,<br><br>                Defendant. | CR. 18-50008-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant Loren Shon Waters, appearing *pro se*, filed a motion for compassionate release. (Docket 82). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Waters' motion. (Dockets 85, 86, 90, 92 & 93). For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 20-06**

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions

---

[1] See https://www.sdd.uscourts.gov/so2006 ("SO 20-06"). SO 20-06 was amended on October 21, 2020, after the motion for release was made. See https://www.sdd.uscourts.gov/socraa. The amendments have no impact on the court's analysis of this case.

under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1). Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. ¶ 1. The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already. These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. ¶ 2.

By the standing order, "within two business days of filing all motions for compassionate release[,]" the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4. Those categories are:

    a.    High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.    Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.    Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

      d.      Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id. The standing order contains provisions for sharing of critical information among the FPD, the U.S. Attorney, the Probation Office and the court. Id. ¶ 5. The priority of briefing is set according to the different categories of assignment of a defendant. Id. ¶¶ 6-8.

## MR. WATERS' CLASSIFICATION

On October 21, 2020, the FPD and the U.S. Attorney filed a notice designating Mr. Waters as an Intermediate Priority case. (Docket 83).

## FACTUAL BACKGROUND

On June 27, 2019, Mr. Waters was sentenced to a term of imprisonment of 120 months for conspiracy to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). (Dockets 75 & 76). Based on a presentence investigation report, Mr. Waters' advisory guideline range was 120 to 135 months imprisonment based on a total offense level of 31 and his criminal history category I. (Docket 76-1 at p.1; Docket 69 ¶ 54). The court later reduced his sentence to 50 months imprisonment followed by 60 months of supervised release. (Docket 89 at pp. 2-3).

Mr. Waters is currently an inmate at FCI Butner Low, a low security federal correctional institution in Butner, North Carolina.  (Docket 82 at p. 2); Fed. Bureau Prisons, https://www.bop.gov.locations/institutions/buf/ (last checked Jan. 27, 2021).  The total inmate population at FCI Butner Low is 718 persons.  Id.  As of January 28, 2021, there were zero active COVID-19 cases among inmates and four among staff, 17 inmate deaths as a result of COVID-19, and 578 inmates and 33 staff had recovered at FCI Butner Low.  https://www.bop/ gov/coronavirus/ (last checked Feb. 16, 2021).  Based on these statistics, over 81 percent of the inmates at FCI Butner Low have contracted COVID-19 and 2.4 percent of them have died as a result.

Mr. Waters has a scheduled release date of September 11, 2022.  https://www. bop.gov/inmateloc/ (last checked Jan. 27, 2021).  Mr. Waters has been in continuous federal custody since March 2, 2019, and served almost half of his sentence.  See Docket 85 at p. 527.  The court estimates his home detention eligibility date is March 11, 2022.[2]  Mr. Waters is currently 47 years old.  Id. at 526.

## MR. WATERS' MOTION

Mr. Waters' *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his many health conditions

---

[2]The court does not have updated information from the BOP about release dates and home detention dates since defendant's sentence was amended to 60 months in October 2020.

4

during the COVID-19 pandemic.  (Docket 82).  Mr. Waters' medical records confirm the following medical conditions, among several others:

- Iron deficiency anemia.  (Docket 85 at p. 168);
- Morbid obesity.[3]  Id.;
- Anxiety.  Id.;
- Sleep apnea.  Id.;
- Polyneuropathy.  Id.;
- Essential (primary) hypertension.  Id.;
- Pulmonary hypertension, NOS.  Id.;
- Atrial fibrillation.[4]  Id.;
- Heart disease, unspecified.  Id. at p. 169;
- Asthma.  Id.; and
- Chronic ulcer of the skin.  Id.

Mr. Waters' prescription regimen currently includes an albuterol inhaler (asthma), amitriptyline (anxiety), apixaban (blood thinner), atorvastatin (heart

---

[3]Mr. Waters has been morbidly obese for quite some time.  See Docket 69 ¶ 42.  At the time of the presentence investigation interview, Mr. Waters reported being 5'8" tall and weighing 462 pounds.  Id.  His medical records while incarcerated indicate a weight of 427 pounds on October 9, 2019, and 452 pounds on March 2, 2020.  (Docket 85 at pp. 148, 374).

[4]"Atrial fibrillation is an irregular and often rapid heart rate that can increase [the] risk of strokes, heart failure and other heart-related complications."  Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/atrial-fibrillaiton/symptoms-causes/syc-20350624 (last checked Jan. 28, 2021).

disease), buspirone (anxiety), carvedilol (hypertension), diltiazem ER (heart disease), diltiazem HCI (heart disease), ferrous gluconate (anemia), fluoxetine (anxiety), gabapentin (pain), lisinopril (hypertension) and several others.  Id. at pp. 321-22, 342, 373-79, 459-65.

On May 20, 2020, Mr. Waters underwent cardiac catheterization[5] at Duke Regional Hospital.  Id. at p. 341, 505-09.  The purpose was to evaluate the enlargement of his right ventricular and his pulmonary pressures.  Id. at p. 520.  The report of the procedure indicated heart failure, unspecified, and secondary pulmonary hypertension.  Id. at p. 500.  In June 2020, Mr. Waters tested positive for COVID-19.  Id. at p. 338.  His medical records reflect an asymptomatic course of the condition.  Id. at p. 458.

In a supplement to the *pro se* motion, defense counsel argues the unprecedented COVID-19 pandemic along with Mr. Waters' serious health conditions, which place him at risk of developing serious complications from COVID-19, are extraordinary and compelling reasons warranting his compassionate release.  (Docket 90 at p. 5).  Counsel points out the virus is spreading more quickly through the federal prison system and the infection rate in the Bureau of Prisons is higher than in the general public.  Id. at pp. 5-7.  Because Mr. Waters has conditions identified by the Centers for Disease

---

[5]"Cardiac catheterization is a procedure used to diagnose and treat certain cardiovascular conditions."  Mayo Clinic, https://www.mayoclinic.org/tests-procedures/cardiac-catheterization/about/pac-20384695 (last checked Jan. 28, 2021).

Control and Prevention ("CDC") that increase the risk of severe illness from COVID-19, and several of the conditions identified as potentially increasing his risk of a severe illness, counsel urges the court to grant the motion. Id. at pp. 8-13.  Addressing the 18 U.S.C. § 3553(a) factors, counsel states Mr. Waters is not a danger to the community, had no scorable criminal history points and has no disciplinary issues while in custody. Id. at pp. 13-14.

## UNITED STATES' OPPOSITION

The government opposes Mr. Waters' motion for compassionate release. (Docket 92).  The government first argues the motion should be denied because Mr. Waters already tested positive for COVID-19 and was asymptomatic. Id. at p. 3.  This, the government argues, reduces the chance he will again contract the condition. Id.  The government's next contention is Mr. Waters' medical conditions are not sufficiently serious to warrant compassionate release, even though it acknowledges the Department of Justice's stance that "during the COVID-19 pandemic conditions . . . which the CDC has determined increase risk of severe illness due to COVID-19, present 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility . . . .' " Id. at pp. 7-8.

Turning to the 18 U.S.C. § 3553(a) factors, the government argues Mr. Waters is a danger to public safety if released because his offense involved distributing large amounts of methamphetamine in a small community, and he

maintained a firearm for protection while doing so. Id. at p. 11. The government argues other 3553(a) factors also counsel against release, suggesting Mr. Waters has not served enough of his sentence, that releasing him does not promote respect for the law or provide just punishment for the offense, the nature of the drug-distribution crime itself does not warrant a reduction, and Mr. Waters can receive better medical care while incarcerated. Id. at pp. 12-13. Finally, the government argues that if Mr. Waters is released, the court should impose a term of home confinement as a condition of his supervised release. Id. at pp. 14-15. A term of home confinement, according to the government, would alleviate some of the perceived unfairness in re-balancing of the 3553(a) factors in this case. See id.

     In reply, Mr. Waters argues his prior infection is no guarantee that he will not become re-infected with COVID-19, and he points out reinfection cases have been confirmed. (Docket 93 at pp. 1-2). He argues he is not just obese, but morbidly obese and this condition alone increases his risk of hospitalization by 4.5 times if re-infected. Id. at p. 2. The degree of his obesity also makes it difficult to provide self-care and socially distance in a crowded prison. Id. His other serious medical conditions, argues Mr. Waters, contribute to and increase his risk. Id. at pp. 3-4.

     Addressing the 3553(a) factors, Mr. Waters reiterates he is not dangerous, explains his drug use was related to grief, and states he has now taken several courses to address his addiction. Id. at p. 7. If released, Mr.

8

Waters plans to stay with his daughter, who is a corrections officer at the Pine Ridge Justice Center in Pine Ridge, South Dakota.  Id. at p. 6.  He suggests this is a safer environment because of the precautions his daughter takes at work, and he will have minimal contact with others.  See id.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider a prisoner's request for compassionate release after he exhausts the administrative remedies mandated by the statute.

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The court finds Mr. Waters exhausted the administrative procedure provision contemplated by § 3582(c)(1)(A).[6]  On July 22, 2020, Mr. Waters submitted a request to Warden Lyn requesting compassionate release.  (Docket

---

[6]The government does not dispute administrative exhaustion has been satisfied.  See generally Docket 92.

9

85 at pp. 2-3). Warden Lyn denied his request by letter dated September 8, 2020. Id. at p. 4. Accordingly, Mr. Waters' motion may be addressed on its merits.

### **Extraordinary and Compelling Reasons**

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United States Sentencing Commission. "[I]n promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [the Sentencing Commission] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the Bureau of Prisons ("BOP") deems extraordinary and compelling. U.S.S.G. § 1B1.13 comment. n.1. The four categories have not been updated since December 2018 when the First Step Act became law.[7]

---

[7]The United States Sentencing Commission lacks a quorum and "currently has only two voting members, two short of the four it needs to amend the [U.S.S.G.]." United States v. Marks, 455 F. Supp. 3d 17, 24 (W.D.N.Y. 2020) (references omitted).

The United States Courts of Appeals for the Second, Fourth, Sixth and Seventh Circuits have addressed the court's authority under the First Step Act.[8]  See United States v. Brooker, 976 F.3d 228 (2d. Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); and United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020).

The Second Circuit identified the question at the heart of these cases, which is "whether the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling,' or whether that power remains exclusively with the BOP Director as stated in Application Note 1(D)."  Brooker, 976 F.3d at 234.  The Second Circuit concluded "that, despite Application Note 1(D), the First Step Act freed district courts to exercise their discretion in determining what are extraordinary circumstances."  Id.  The court held the language of U.S.S.G. § 1B1.13 "is clearly outdated and cannot be fully applicable."  Id. at 235.  "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."  Id. at 237; see also Gunn, 980 F.3d at

---

[8]The United States Court of Appeals for the Eighth Circuit had two clear opportunities to address this issue but declined to do so.  See United States v. Rodd, 966 F.3d 740 (8th Cir. July 16, 2020) and United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. July 31, 2020).

11

1180 (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion"); Jones, 980 F.3d at 1111 ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction.").

The court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." Brooker, 976 F.3d at 237. See also McCoy, 981 F.3d at 284 (same); Jones, 980 F.3d at 1111 (same); Gunn, 980 F.3d at 1180 (same). The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act.

Turning to that task, medical records substantiate Mr. Waters' multiple, serious health conditions as identified above. Conditions such as morbid obesity and heart disease with identified heart failure, are included on the

12

CDC's list of risk-increasing conditions.9  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).  Such conditions, regardless of age, increase the risk of severe illness from COVID-19.  Id.  Mr. Waters also has conditions that potentially increase the risk of severe illness from COVID-19, as identified by the CDC, including asthma, hypertension and pulmonary hypertension.10  Notably, as CDC guidance explains, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  See https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Mr. Waters has an extensive list of underlying conditions, including some that are not identified on the CDC's list, such as sleep apnea, polyneuropathy and atrial fibrillation.

---

9The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer, chronic kidney disease, COPD, Down's syndrome, heart conditions (such as heart failure, coronary artery disease or cardiomyopathies), immunocompromised state from solid organ transplant, obesity, pregnancy, sickle cell disease, smoking and type 2 diabetes.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

10The CDC identifies the following conditions as ones that *might* increase the risk from COVID-19: moderate to severe asthma, cerebrovascular disease, cystic fibrosis, hypertension, neurologic conditions, overweight, liver disease, pulmonary fibrosis, type 1 diabetes and several others.  Id.

13

Mr. Waters' medical conditions are similar in risk and seriousness to other defendants who have been granted compassionate release by this court. See United States v. Eck, CR. 18-50058, 2020 WL 7390516 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of Type 2 diabetes, hyperlipidemia, hypertension and asthma); United States v. Gravens, CR. 13-50101, 2020 WL 7390514 at *2 (D.S.D. Dec. 16, 2020) (noting conditions of hypertension, chronic obstructive pulmonary disease and hyperlipidemia); United States v. O'Kelly, CR. 17-50073-02, 2020 WL 7318113 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of heart failure, cardiac arrhythmia, thyroid disorder and enlarged prostate); United States v. Hosek, CR. 16-50111, 2020 WL 7318107 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of affective mood disorder, chronic pain, kidney stones, insomnia and a family history of heart disease, cancer and auto-immune deficiency); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109 at *2 (D.S.D. Dec. 11, 2020) (noting conditions of Type 2 diabetes, obesity, hyperlipidemia, hypertension and depressive disorder).

In tandem with his serious health conditions, Mr. Waters' incarceration exacerbates the risk of infection. Though currently there are few active cases of COVID-19 among inmates at FCI Butner Low, that has not previously been the case. See BOP: COVID-19 Update, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Jan. 28, 2021). Among FCI Butner's 718 inmate-population, 582 inmates have recovered from COVID-19 and 17 have died. Id.

      The CDC has identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated Oct. 16, 2020).  The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks.  See BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).  Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting.

      The court cannot ignore the potential of re-infection when the risk for Mr. Waters is so significant.  Cases of reinfection have occurred, and there is still much to learn about COVID-19.  See Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last checked Jan. 28, 2012).  The new strains or variants of COVID-19 only add to the risk and uncertainty.  See New COVID-19 Variants, https://www.cdc.gov/coronavirus/2019-ncov/transmission/vairant.html (updated Jan. 15, 2021) (last checked Jan. 28, 2021).

From a careful review of his medical records, the court finds Mr. Waters' major health issues are chronic. That is, his conditions will only persist and likely worsen over time. During the COVID-19 pandemic, Mr. Waters' conditions significantly diminish his ability to provide self-care within the environment of a correctional facility, putting him at risk of severe illness—and even death—should he contract the virus. The court finds Mr. Waters' chronic and severe medical conditions make him especially vulnerable to COVID-19, even compared to other individuals incarcerated in FCI Butner Low or other BOP facilities.

The court finds Mr. Waters meets his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

**3553(a) Factors**

Against these findings, the court must consider if compassionate release comports with the § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant and the need to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, to deter criminal conduct and to protect the public from further crimes of the defendant, among others. Id. § 3553(a)(1)-(7).

In Mr. Waters' case, the nature and circumstances of the offense—drug trafficking—is serious. Id. § 3553(a)(1). Mr. Waters was responsible for the distribution of a significant amount of methamphetamine. He agreed that over

16

500 grams of methamphetamine was foreseeable through his participation in the conspiracy.  (Dockets 43 & 69 ¶ 2).  Additionally, Mr. Waters protected himself with a firearm in connection with his drug distribution activities and allowed others to use his home for the purpose of distributing controlled substances.  Id. ¶¶ 20-21.

"[T]he history and characteristics of the defendant" requires the court to consider the defendant as a whole person.  Koon v. United States, 518 U.S. 81, 113 (1996).  Mr. Waters had no prior juvenile record or adult convictions.  Id. ¶¶ 30-31.  He had no scorable criminal history points, placing him in criminal history category I.  Id. ¶ 32.  While on pretrial release, Mr. Waters struggled to remain chemical free and used alcohol and marijuana on occasion.  Id. ¶¶ 4-5.  Mr. Waters attributed his chemical use to anxiety.  See id.  He has not had any disciplinary violations while in prison.  (Docket 85 at p. 531).  To his credit, and despite limited opportunities during the pandemic, he has participated in educational courses, including a 12-hour drug education class, and worked in the dining hall.  Id. at pp. 529-30.  Mr. Waters does not have a history of violence and does not appear to pose a danger to the public.  Based upon a thorough review of the 3553(a) factors, the court finds compassionate release is appropriate.

The court is cognizant of the government's concerns Mr. Waters has not served a significant portion of his sentence and his early release does not reflect the seriousness of or provide just punishment for the offense.  Mr.

17

Waters is serving a 50-month prison sentence. (Docket 89 at p. 2). Mr. Waters has been in continuous custody since March 2, 2019, which is nearly 23 months. (Docket 85 at p. 527). He has served almost half of his term, excluding any earned good credit time, which he accumulated. Id. The court concludes Mr. Waters' current time in custody is sufficient to adequately deter him from future offenses. The government's concerns can be addressed through conditions of release by imposing a period of home confinement. This will limit Mr. Waters' liberty interests, and he will face harsh consequences if he violates the conditions of his release.

### Home Confinement

The court does not have authority to modify the defendant's sentence to home confinement. United States v. Amarrah, 458 F. Supp.3d 611, 620 (E.D. Mich. 2020). The court does, however, retain the authority to reduce Mr. Waters' sentence to time served and impose a condition of home detention as a condition of his supervised release. See id. The court concludes a 12-month period of home confinement in lieu of imprisonment is sufficient to closely monitor Mr. Waters in the time immediately following his release. Mr. Waters will remain on supervised release for 60 months, subject to the mandatory, standard and special conditions of supervised release imposed in the Amended Judgment, as well as the additional condition of home confinement. (See Docket 89 at pp. 3-5).

### ORDER

Good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 82) is granted.

IT IS FURTHER ORDERD that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that upon his release, Mr. Waters shall reside with Ivis Black Elk in East Ridge Housing in Pine Ridge, South Dakota.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. Waters must report, by telephone, 605-339-5920, to the United States Probation Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota 57701.

IT IS FURTHER ORDERED that Mr. Waters shall be on supervised release for sixty months, subject to the mandatory, standard and special conditions of supervision in the amended judgment of October 29, 2020. (Docket 89 at pp. 3-5).

IT IS FURTHER ORDERED that Mr. Waters shall be subject to home confinement for a period of 12 months, beginning immediately upon release from imprisonment, and comply with the terms of the Home Confinement Participant Agreement as an additional special condition of supervision.

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated February 16, 2021.

                        BY THE COURT:

                        /s/ *Jeffrey L. Viken*
                        JEFFREY L. VIKEN
                        UNITED STATES DISTRICT JUDGE